UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES F. YARBRO,

    Plaintiff,

v.                                               Case No. 4:02-CV-170

PAUL E. SHAMBLIN, et al.,              HON. GORDON J. QUIST

    Defendants.
_____/

## OPINION

       The Court has before it Plaintiff's complaint, in which he has sued Paul E. Shamblin and others. Although the precise nature of Plaintiff's complaint is unclear, it appears that Plaintiff's claims arise out of Lee Township's efforts to enforce various ordinances. At one point in his complaint, Plaintiff alleges that Jessica Bicksford, a Sheriff's Deputy, came onto his property without a hearing or a warrant and placed "stop work sticks" upon Plaintiff's vehicle. Plaintiff also appears to allege that Lee Township filed a criminal complaint against Plaintiff for violation of a blight ordinance and that the case was ultimately dismissed. Plaintiff also alleges that he was removed from a township board meeting and that he found three of his cats dead on his property. Plaintiff requests that this Court award him $10.5 million against Defendants for harassment and defamation and that the Court order Defendant Shamblin and an unidentified Allegan County Sheriff's Deputy to be arrested for trespassing on Plaintiff's property without a court hearing or a warrant.

       On September 19, 2002, the magistrate judge entered an order granting Plaintiff leave to proceed in forma pauperis. Pursuant to 28 U.S.C. § 1915(e)(2), the Court is required to dismiss any action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon

which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See Begola v. Brown, No. 97-2194, 1998 WL 894722, at *1 (6th Cir. Dec. 14, 1998) (stating that "[t]he screening procedures established by § 1915 apply to complaints filed by prisoners as well as non-prisoners whether they have paid the entire filing fee or are proceeding in forma pauperis"). The Court must read Plaintiff's pro se complaint indulgently, see Haines v. Kerner, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. Denton v. Hernandez, 504 U.S. 25, 33 (1992). Based upon its review of the complaint, the Court will dismiss the complaint for lack of subject matter jurisdiction or, in the alternative, failure to state a claim.

Although Plaintiff's allegations are, for the most part, rambling and incoherent, Plaintiff's general theme is that Defendants or others not named in the complaint trespassed upon his property. (Compl. ¶¶ 3-6.) As noted above, it also appears that Plaintiff is asserting a defamation claim, although he fails to identify whom he is suing on this claim. Both of these claims are state law claims not within this Court's original jurisdiction. In addition, Plaintiff does not allege that the parties are of diverse citizenship, and it appears that no such allegation could be made, as all parties reside in Michigan. Moreover, Plaintiff does not expressly allege that he is claiming that his rights under the federal constitutional or laws have been violated. Therefore, this Court lacks jurisdiction to adjudicate Plaintiff's claims.

To the extent that the complaint can be interpreted as asserting a violation of Plaintiff's constitutional rights, those allegations fail to state a claim. The complaint does not specifically refer to Plaintiff's constitutional rights, although he does request in his motion for injunctive relief an "immediate injunction for relief of cite for unconstitutional ordinance passed by Lee Township that

violate (sic) Plaintiff's civil and constitutional rights and the constitutional rights of Plaintiff's property's (sic)." Arguably, Plaintiff's allegations of trespass by Sheriff's Department Deputies and Defendant Shamblin could be construed as a claim for violation of Plaintiff's Fourth Amendment rights. However, the Fourth Amendment only prohibits unreasonable searches and seizures. United States v. Martin, 289 F.3d 392, 396 (6th Cir. 2002). This protection against unreasonable governmental intrusions extends only to situations in which a person has a "reasonable expectation of privacy" from arbitrary official action. Camera v. Mun. Ct. of S.F., 387 U.S. 523, 528, 87 S. Ct. 1727, 1730 (1967). Thus, in determining whether the Fourth Amendment applies in a given situation, a court should examine the plaintiff's reasonable expectations of privacy. Katz v. United States, 389 U.S. 347, 351-53, 88 S. Ct. 507, 511-12 (1967).

In general, courts have held that police officers do not violate a person's reasonable expectation of privacy simply by entering the person's property using normal means of access available to members of the general public. United States v. James, 40 F.3d 850, 862 (7th Cir. 1994) (stating that "where the back door of a residence is readily accessible to the general public, the Fourth Amendment is not implicated when police officers approach that door in the reasonable belief that it is a principal means of access to the dwelling"); Kernats v. Uthe, No. 93 C 2484, 1993 WL 278520, at *6 (N.D. Ill. July 23, 1993) ("A police officer may approach a private dwelling through normal means of access such as knocking on the door or ringing a doorbell, without violating the Fourth Amendment."). In other words, the Fourth Amendment does not require that law enforcement or other government officials obtain a warrant before going onto a person's property and/or approaching the door in order to inquire about a legitimate matter or concern. Estate of Smith v. Marasco, No. CIV. 00-CV-5485, 2002 WL 54507, at *16 (E.D. Pa. Jan. 11, 2002) (concluding that

the police had a legitimate reason to enter the decedent's property unconnected with any search, namely, a neighbor's complaint that the decedent's lights were shining onto the neighbor's property).

In Artes-Roy v. City of Aspen, 31 F.3d 958 (10th Cir. 1994), the plaintiff alleged that Lyman, the chief building inspector for the city, violated the plaintiff's constitutional rights when he entered her home to inform construction workers that they were performing work in violation of a previous stop work order. The plaintiff testified that she did not let the defendant into her house and there were no construction workers close to the door who could have invited the defendant inside. After going to the back of the house to notify workers that the defendant wanted to speak with them, the defendant returned and saw that a police officer had entered the house and was waiting with the defendant. The defendant and the police officer left the house upon the plaintiff's request. Accepting the plaintiff's testimony as true, the court held that the defendant did not violate the Fourth Amendment by entering the plaintiff's house without her consent and, even there was a violation, it was de minimis and did not amount to an actionable wrong. Id. at 962-63. The court reasoned that the intrusion was minimal and the defendant did not enter the house with the intent to inspect or to take any person or property into custody but, rather, sought only to speak with the workers regarding their violation of the stop work order. Id. at 962.

In this case, Plaintiff has alleged that: (1) on September 9, 2000, Shamblin and a Sheriff's Deputy entered Plaintiff's property and posted "stop work sticks" upon Plaintiff's vehicle; (2) that in August or September 2002 a Sheriff's Deputy entered Plaintiff's house without Plaintiff's consent and later returned and came onto Plaintiff's property; and (3) that Shamblin and or a Sheriff's Deputy entered Plaintiff's property on September 17, 2002, and posted a citation on Plaintiff's door handle. The allegations regarding Shamblin and Sheriff's Deputies coming onto Plaintiff's property for the

purpose of posting stop work notices and without entering Plaintiff's residence do not give rise to a Fourth Amendment claim because Plaintiff did not have a reasonable expectation of privacy in areas that were open and accessible to the general public. Arguably, the allegation that an unidentified Sheriff's Deputy entered Plaintiff's house uninvited could give rise to a Fourth Amendment claim, depending upon development of the facts. As set forth in <u>Artes-Roy</u>, if the intrusion was minimal and was for the purpose of speaking with the Plaintiff rather than to conduct a search or seize a person or property, no violation or, at most, a <u>de minimis</u> violation would have occurred. However, Plaintiff has not named the Sheriff's Deputy as a defendant in the complaint.

Therefore, the Court will enter an Order dismissing Plaintiff's complaint for the reasons stated above.

Dated: September 23, 2002            /s/ Gordon J. Quist
                                                                 GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE